STATE OF MAINE
SAGADAHOC, ss.

SUPERIOR COURT
AMH - SAC7 - 10/14/2010

JAMES B. WILLIAMS and
ELIZABETH J. WILLIAMS

    Plaintiffs

    v.

ALBERT H. PREST and
ELIZABETH P. PREST

    Defendants

Docket No. SAGSC-RE-07-03

    and

NATIONAL CITY MORTGAGE
CO.

    Party-in-Interest

## JUDGMENT

In this real estate case, the parties agreed to waive jury trial and reached several stipulations on contested issues. The parties agreed that remaining issues would be resolved during a site visit and hearing.

By agreement of the parties, the site visit occurred June 24, 2010 at the property at issue in this case, with the parties and their counsel present. A video recording of the visit was made by a representative of the Defendants. After the site visit, the parties presented sworn testimony on remaining issues during a recorded hearing at the West Bath District Court. During the site visit and at the conclusion of the hearing, the court made certain findings and conclusions.

The court requested counsel to submit proposed judgments reflecting their agreement on certain issues and the court's rulings on the remaining contested issues, with all parties reserving their right to object to and appeal from the court's resolution of the remaining contested issues. The court having been fully advised in the premises hereby enters judgment as follows on the complaint and counterclaim.[1]

Based on the entire record, it is hereby ORDERED, ADJUDGED AND DECREED as

---

[1] Plaintiffs and Counterdefendants, James and Elizabeth Williams, shall be referred throughout as "Plaintiffs" and Defendants and Counterplaintiffs, Albert and Elizabeth Prest, shall be referred to throughout as "Defendants."

follows:

## Section 1

By agreement, the Plaintiffs shall convey to the Defendants by quitclaim release deed their entire right, title and interest in all of the following described premises situated in the Town of West Bath, County of Sagadahoc and State of Maine:

- the southerly arm of the "Y-shaped" configuration, be it denominated as an easement, right of way, license, access, path or otherwise, depicted on Lot 3 of a certain "Plan Showing Property of E. B. Williams at Poster's Point, West Bath, ME" by C. A. Corliss dated 1923 and recorded in the Sagadahoc County Registry of Deeds at Plan Book 3, Page 18 (the "Corliss Plan")

- that portion of the land and any improvements situated thereon, depicted as the "Passage" on the Plan that is situated to the west of the extension of the plaintiffs' westerly boundary line of the property, depicted as "Armstrong" on the Corliss Plan, as now owned by the plaintiffs in accordance with a deed recorded in the Sagadahoc County Registry of Deeds at Book 1939, Page 52; and

- any land and the improvements thereon westerly of a line the beginning of which is at a point that is at a certain ¾" pipe, 14" above grade located at the common boundary of the land described in a deed recorded in the Sagadahoc County Registry of Deeds at Book 1939, Page 52 and a deed recorded in the Sagadahoc County Registry of Deeds at Book 2034, Page 132 thence N 7° 54' 22" E a distance of 43.01 feet to a ¾" pipe, 4" below grade, as more particularly shown on a plan prepared by John Bradley Wood, PLS, being Job # 0605 (the "Wood Plan"). Any party may relocate the existing wooden fence to conform to this line.

## Section 2

The parties have requested that the court enter a declaratory judgment setting out the location, width and course of the Plaintiffs' access way from the Foster's Point Road Extension on the west to the Plaintiffs' Rye Point property on the east over what has been referred to as the northerly arm of the "Y" right of way portrayed on the Corliss Plan and a certain Coastal & Woodland Survey for Paul W. and Margaret C. Thompson recorded at Plan Book 24, Page 56, in the Sagadahoc County Registry of Deeds.[2] The court hereby declares that the width of the right of way is generally 10 ½ feet, except where it is widened on the westerly end to allow for turning into and out of the right of way. The court hereby finds and declares the right of way to be a certain lot or parcel of land situated on the southeasterly side of the private portion of Foster's Point Road, so-called, in the Town of West Bath, County of Sagadahoc and State of Maine, bounded and described as follows:

---

[2] Nothing contained in this Judgment modifies or in anyway limits the existing utility easements set out in the deeds recorded at Book 210, Page 44, Book 210, Page 45 and Book 519, Page 48 in the Sagadahoc County Registry of Deeds.

Beginning at a capped iron rod set on the Southeasterly sideline of said Foster's Point Road as shown on a "Plan of a Standard Boundary Survey of land on said Foster's Point Road made for Albert H. Prest (and) Elizabeth P. Prest" by Island Surveys dated June 6, 2006, and recorded in the Sagadahoc County Registry of Deeds at Plan Book 43 Page 30; said point of beginning at N 22°34'44" E a distance of Sixty-Seven and 39/100 (67.39) Feet from a ¾" iron pipe found, 1" below grade, at the Southwesterly corner of land now or formerly of Albert H. Prest and Elizabeth P. Prest as shown on said plan and as described in an instrument recorded in said Registry at Book 2034 Page 132; thence by the following courses and distances:

N 22°34'44" E along the Southeasterly sideline of Foster's Point Road as shown on said plan a distance of Fifteen and 06/100 (15.06) Feet to a capped iron rod set, thence;

S 38°33'12" E a distance of Two and 50/100 (2.50) Feet to a grade stake found, thence;

S 38°33'12" E a distance of Fourteen and 56/100 (14.56) Feet to a grade stake found, thence;

S 50°07'49" E a distance of Twenty-One and 75/100 (21.75) Feet to a grade stake found, thence;

S 45°26'33" E a distance of Thirty and 58/100 (30.58) Feet to a grade stake found, thence;

S 45°26'33" E a distance of Thirteen and 99/100 (13.99) Feet to a capped iron rod set on the Westerly line of land now or formerly of James B. Williams and Elizabeth J. Williams as described in an instrument recorded in said Registry at Book 1939 Page 52, thence;

S 7°54'22" W by said land now or formerly of Williams a distance of Thirteen and 09/100 (13.09) Feet to a capped iron rod set, thence;
N 45°22'18" W a distance of Twenty-One and 87/100 (21.87) Feet to a grade stake found, thence;

N 45°22'18" W a distance of Twenty-Nine and 99/100 (29.99) Feet to a grade stake found, thence;

N 49°37'53" W a distance of Twenty-One and 37/100 (21.37) Feet to a grade stake found, thence;

N 53°22'32" W a distance of Nine and 25/100 (9.25) Feet to a grade stake found, thence;

N 53°22'32" W a distance of Three and 05/100 (3.05) Feet to the point of beginning.

The above described parcel of land is hereinafter referred to as "the Remaining Right of Way" and contains 903± square feet. Bearings are referenced to True North as determined by astronomic observation.

A survey plan depicting the Remaining Right of Way has been prepared by Defendants' surveyor, John Bradley Wood, and a copy thereof is attached to this Judgment. The original

3

survey shall be recorded in the Sagadahoc County Registry of Deeds. The surveying and recording costs to be born by the Defendants.

Consistent with the parties' agreement that this Judgment shall not be recorded, Defendants shall convey by easement deed a right of way to Plaintiffs and their invitees for access by vehicle and otherwise over the Remaining Right of Way as defined in the recorded survey, and Plaintiffs shall convey to Defendants by quitclaim deed their entire right, title and interest in Defendants' property except for the Remaining Right of Way as defined in the recorded survey.

## Section 3

The Defendants shall convey to the Plaintiffs by quitclaim release deed their entire right, title and interest in and to a certain "right to take water from a spring situated in the pasture" as described in a deed recorded in the Sagadahoc County Registry of Deeds at Book 2034, Page 132.

## Section 4

John Bradley Wood, PLS, shall prepare an additional survey or supplement the existing Wood Survey by depicting the premises and the bounds of the conveyances described in Section 1 of this Judgment, at the Defendants' expense. Prior to recording, the survey shall be reviewed by the Plaintiffs for purposes of determining its conformity with this Judgment. The survey shall then be recorded in the Sagadahoc County Registry of Deeds and a copy of the recorded survey shall be filed with the Court.

## Section 5

The Defendants shall not place or knowingly permit any obstruction within six inches of the bounds of the Remaining Right of Way and the Plaintiffs are given a right to remove any such obstructions. Plaintiffs may remove the tree next to the northwest corner of the Remaining Right of Way. However, before removing said tree, Plaintiffs shall notify the Defendants at least 21 days in advance, so that Defendants may, at their option, relocate the tree.

This Judgment does not address whether the Defendants may install a gate at the right of way. However, any such installation would be subject to the provisions of this section, meaning that no such gate may prevent or restrict Plaintiffs' ability to use the Remaining Right of Way, and Plaintiffs will have complete ability to open the gate at will. Defendants will give 90 days advance written notice to the Plaintiffs before installing any gate. Nothing in this paragraph limits any party's rights and remedies in that event.

## Section 6

(a) Defendants, at their expense, shall remove or cause to be removed snow and ice in excess of 3 inches within the bounds of the Remaining Right of Way. Removal shall take place

4

within 4 hours of the conclusion of a snowfall event; except that, if the snowfall ends during either the late night or early morning hours, the Defendants have 4 hours from sunrise to remove the snow. It is the intention of this paragraph to assure that the Defendants have no obligation to monitor and measure snow in the darkness. The Plaintiffs may remove snow and ice within the Remaining Right of Way in the event the Defendants fail to do so as authorized by this Judgment. In the event the Plaintiffs do remove snow and ice, they may push and deposit it outside of the bounds of the Remaining Right of Way so long as the snow and associated effluent is not deliberately deposited or piled on any portion of the Defendants' property. The preceding sentence does not preclude the incidental deposit of snow to the sides of the plow on the Defendants' property while it is traveling the length of the right of way. Plaintiffs shall use their best efforts to promptly repair any damage they cause; and

(b)    Defendants shall within 30 days of the date of this Judgment, stabilize the following portion of the Remaining Right of Way:

> Beginning at a point that is at the northeasterly corner of the Remaining Right of Way, thence a distance of 11 and one-half feet along the northerly boundary of the Remaining Right of Way, thence in a westerly direction across the Remaining Right of Way to a point 20 feet, eight inches from the southeasterly corner of the Remaining Right of Way, thence along the southerly boundary of the Remaining Right of Way to said southeasterly corner, thence turning N 7° 54' 22" W and continuing along the Remaining Right of Way to the point of beginning.

The Defendants may stabilize the above-described portion of the Remaining Right of Way by placing a 12" base of gravel of sufficient diameter and a layer of loam over the gravel, and then seeding it with grass. If the Defendants fail to complete this stabilization within said period of time, the Plaintiffs may stabilize the portion by laying crushed gravel passing through a 2" sieve, free of vegetation and sand, to a depth of 12". The right of way shall not be paved or filled, except that the existing wheel ruts may be filled with gravel and a top layer of seeded loam, so as to enable the conveyed usage. Needed maintenance of the Remaining Right of Way shall occur as defined above, the intent being to maintain the Remaining Right of Way as defined herein, without diminution or expansion.

## Section 7

In recognition of a legitimate need to maintain security, comply with the general requirements of their homeowners insurance policy, prevent vandalism and preserve the safety of their premises, the Defendants may illuminate any portion of their property by artificial lighting so long as the lighting is not directed on any portion of the Plaintiffs' property situated at Rye Point, so-called, as described in a deed recorded in the Sagadahoc County Registry of Deeds at Book 1939, Page 52. However when the Plaintiffs' property is occupied at night by either themselves or their invitees, the Defendants will turn off the exterior lights located on the Defendants' existing shed when requested by the Plaintiffs, and will turn off said lights by approximately 11:00 pm except for reasonable periods when circumstances require their use between that time and sunrise.

The lights that now or hereafter are mounted on Defendants' shed southerly of the aforementioned right of way, shall be directed downward.

If during a period when the Defendants' exterior lights are not on either the Plaintiffs or any of their guests or invitees sustain or allege an injury while using the Plaintiffs' right of way from the Foster's Point Road Extension to the Plaintiffs' Rye Point lot, the Plaintiffs shall hold the Defendants harmless and shall indemnify the Defendants, to the extent of their home owner's insurance which the Plaintiffs shall maintain and shall be in a reasonable amount, for any expenses incurred by the Defendants excepting only those injuries or damages arising out of the gross negligence or willful misconduct of either or both of the Defendants.

## Section 8

(a) Except as necessary to implement and seek the enforcement of this Judgment, the Plaintiffs shall release Defendants from any and all claims, demands, actions and causes of action which have been made or could have been made in this case. Included in this release is the Plaintiffs' claim for the removal of any portion of pavement on Foster's Point Road as alleged in the verified complaint and amended complaint. The Plaintiffs waive, with prejudice, any claims with regard to the Defendants paving of a portion of the Foster's Point Road Extension as such claims are set out in Paragraph 7 of Plaintiffs' Complaint.

(b) Except as necessary to implement and seek the enforcement of this Judgment, that the Defendants shall release the Plaintiffs from any and all claims, demands, actions and causes of action which have been made or could have been made in this case.

(c) If any party fails for any reason to execute and deliver any or all deeds or instruments and all related documents required by this judgment within thirty (30) days of the date on which this Judgment becomes final, or such additional time the court may for good cause grant, the court may appoint the clerk of court or other disinterested person, to execute and deliver such deeds or instruments and related documents pursuant to M. R. Civ. P. 70 with full and complete power of substitution and with every other power and authority to execute and deliver such documents. Any deeds or instruments and all related documents, if executed by the clerk of court, will have the same force and effect as though executed and delivered by the parties or any one of them, as applicable. The deeds called for in this paragraph do not reflect new grants but are for the purpose of conforming the deed record to the agreements of the parties and/or the court's declarations herein.

(d) By agreement, no copy or the original of this Judgment shall be recorded in the Sagadahoc County Registry of Deeds, it being acknowledged and ordered that this Judgment shall not be appurtenant to or run with the land affected hereby. However, all conveyances required herein shall run with the land and shall bind and benefit the heirs and assigns of the parties to the conveyances. Likewise, all deeds to be delivered by any party shall first be provided to the grantees and their counsel for approval, which approval shall not be unreasonably withheld, prior to their final delivery and execution.

6

(e)   This Judgment is a final judgment, and it reflects the entire agreement of the parties as well as the entire ruling of the court as to all claims and parties.   Any claim or counterclaim not expressly adjudicated in this Judgment is hereby dismissed with prejudice.

(f)   Any party may enforce any provision of this Judgment by means of any available legal or equitable remedy, including but not limited to relief under M.R. Civ. P. 60(b), 66 and/or 70.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Judgment by reference in the docket.

DATED:   _14 October 2010_

A. M. Horton
Justice, Maine Superior Court

7